UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

CALVIN EUNICE MARSHALL,

        Plaintiff,

v.

AMY WESTCOMB et al.,

        Defendants.
_____/

Case No. 2:25-cv-144

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his original complaint (ECF No. 1) in the United States District Court for the Eastern District of Michigan. In an order (ECF No. 5) entered on June 20, 2025, the Eastern District transferred the action to this Court for further proceedings. In an order (ECF No. 8) entered on July 2, 2025, the Court directed Plaintiff to file an amended complaint within 28 days. The Court received Plaintiff's amended complaint (ECF No. 11) on July 28, 2025.

The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues the following LMF personnel: (1) Deputy Warden Unknown Kienitz, Chaplain Unknown Party #1, Prison Counselor Unknown Hill, Sergeant Unknown Hill, Officer Unknown Valquez, Dr. Amy Westcomb, and Registered Nurse Michelle Hemmer.

Plaintiff alleges that he was placed in segregation at LMF on March 20, 2025. (Am. Compl., ECF No. 11, PageID.13.) On April 22, 2025, Defendant Valquez served Plaintiff "food with toenails in it." (*Id.*) Plaintiff contends that no one gave him a new tray. (*Id.*) Plaintiff filed a grievance. (*Id.*) He also noted that the "food tasted of chemicals." (*Id.*) Plaintiff became "very sick" and alleges that as of July 23, 2025, he was still experiencing headaches and stomachaches. (*Id.*) Plaintiff alleges that he told all Defendants about the issue and stopped eating when Defendant Valquez was working. (*Id.*) Plaintiff indicates that as a result, he had "low calorie[] intake" and lost weight. (*Id.*)

Plaintiff goes on to state that Defendant Kienitz held him in segregation on May 18, 2025. (*Id.*)

After Plaintiff's food was tampered with, he requested a religious meal. (*Id.*) Plaintiff alleges that Defendant Unknown Party stated, "No[,] I don't care about this issue." (*Id.*) Plaintiff

alleges that he practices Islam, and that as of July 23, 2025, no one will allow him a religious meal, which is "vegan and clean." (*Id.*)

Finally, Plaintiff alleges that he told all medical staff and all Defendants about a "pain in [his] head[,] which [Plaintiff] believes is a brain infection from staff tampering with food." (*Id.*) Plaintiff alleges that he was still experiencing pain as of July 23, 2025. (*Id.*)

Based upon the foregoing, Plaintiff states that he is raising First, Eighth, and Fourteenth Amendment claims for relief. Plaintiff seeks damages, as well as injunctive relief in the form of "blood testing for all diseases" and a CT scan of his brain "for infection due to severe migraines, headaches[,] and stomachaches." (*Id.*, PageID.5.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Courts must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at

679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted *supra*, Plaintiff states that he is asserting First, Eighth, and Fourteenth Amendment claims for relief.

      **A.**      **Claims Against Defendants Westcomb, Hill, Hill, and Hemmer**

Plaintiff has named Dr. Westcomb, Prison Counselor Hill, Sergeant Hill, and Registered Nurse Hemmer as Defendants. However, Plaintiff does not otherwise mention these individuals in the body of his amended complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

4

In his amended complaint, Plaintiff does appear to implicate these Defendants when he mentions that: (1) none of the Defendants would help after he received a meal tray containing toenails; (2) no one would serve Plaintiff a religious meal; and (3) he told all Defendants about the pain in his head, which Plaintiff believes is a brain infection. (Am. Compl., ECF No. 11, PageID.13.) However, "[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable[.]" *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Plaintiff's claims against Defendants Westcomb, Hill, Hill, and Hemmer fall far short of the minimal pleading standards. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for the foregoing reasons, the Court will dismiss Plaintiff's claims against Defendants Westcomb, Hill, Hill, and Hemmer.

B. **First Amendment Claim**

Plaintiff asserts a First Amendment free exercise claim based upon his allegation that he requested a religious meal after his tray had been tampered with and Defendant Unknown Party #1, the chaplain, stated, "No[,] I don't care about this issue." (Am. Compl., ECF No. 11, PageID.13.) Plaintiff claims that he practices Islam, and that as of July 23, 2025, no one will give him a religious meal, which Plaintiff describes as "vegan and clean." (*Id.*)

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely

5

exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Here, Plaintiff's First Amendment free exercise claim is entirely conclusory. Although Plaintiff mentions that he practices Islam, he fails to allege any fact suggesting that his beliefs are "sincerely held." Notably, Plaintiff does not allege any facts suggesting that the religious diet he requested is a religious belief within Plaintiff's own "scheme of things." *See Kent*, 821 F.2d at 1224–25. Instead, Plaintiff's complaint suggests that he did not request the religious diet because of his religious beliefs, but because of his belief that the diet would be "clean" and would not be tampered with. Plaintiff essentially asks the Court to fabricate plausibility to his First Amendment claim from mere ambiguity, but ambiguity does not support a claim for relief. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim

6

under § 1983. *See Iqbal*, 556 U.S. at 678–79. Accordingly, Plaintiff's First Amendment claims will be dismissed.

### C. Eighth Amendment Claims

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference

7

standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Food Tampering

Plaintiff contends that on April 22, 2025, Defendant Valquez served Plaintiff a food tray with toenails in it. (Am. Compl., ECF No. 11, PageID.13.) While certainly off-putting, "the tampering of a food tray on one occasion does not rise to the level of an Eighth Amendment violation." *Johnson v. Deeren*, No. 2:12-cv-205, 2012 WL 6019365, at *9 (W.D. Mich. Dec. 3, 2012); *see also Cross v. McMackin*, No. 87-3053, 1987 WL 44544, at *1 (6th Cir. Aug. 24, 1987) (noting that "[c]laims of occasional foreign objects in food do not state an [E]ighth [A]mendment violation of the right to remain free from cruel and unusual punishment"). In any event, Plaintiff fails to allege any facts from which the Court could infer that Defendant Valquez was aware of the toenails in Plaintiff's food tray and deliberately served that tray to Plaintiff anyway. For those reasons, Plaintiff's Eighth Amendment claim against Defendant Valquez premised upon food tampering will be dismissed.

### 2. Lack of Nutrition

Plaintiff also alleges, in a conclusory manner, that the food tasted like chemicals and that he stopped eating when Defendant Valquez was working, resulting in him losing weight, being hungry, and having a low calorie intake. (Am. Compl., ECF No. 11, PageID.13.) As an initial matter, the fact that Plaintiff voluntarily stopped eating when Defendant Valquez was working does not preclude him from asserting Eighth Amendment claims premised upon a lack of sufficient nutrition. *See Rhodes v. Michigan*, 10 F.4th 665, 676–77 (6th Cir. 2021).

The Eighth Amendment requires that prisoners be given sufficient food to "maintain normal health." *Cunningham v. Jones,* 567 F.2d 653, 660 (6th Cir. 1977). Although Plaintiff alleges weight loss and a low calorie intake due to not eating when Defendant Valquez was working, he does allege any facts from which the Court could infer that any of the named Defendants were aware of any significant weight loss or any other symptoms resulting from a lack of adequate nourishment. Accordingly, any intended Eighth Amendment claims premised upon a lack of sufficient food will be dismissed.

### 3. Medical Care

Plaintiff also alleges, in a conclusory fashion, that he told all medical staff and all Defendants about "pain in [his] head[,] which [Plaintiff] believes is a brain infection from staff tampering with food." (Am. Compl., ECF No. 11, PageID.13.) Plaintiff contends that he is still experiencing pain, as well as headaches and stomachaches. (*Id.*) To the extent Plaintiff has asserted Eighth Amendment claims premised upon deliberate indifference to serious medical needs, Plaintiff fails to state a claim for the reasons set forth below.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated

when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal


quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 927 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, Plaintiff's allegations are too conclusory for purposes of both the objective and subjective prongs of an Eighth Amendment claim. First, Plaintiff simply speculates that he has a brain infection. His complaints of pain, headaches, and stomachaches, without further allegations concerning his symptoms, are simply too conclusory to suggest that Plaintiff suffers from a serious medical need. In any event, Plaintiff does not allege that any of the named Defendants had any involvement in Plaintiff's receipt or lack of medical care. As discussed above, where a person is named as a defendant without an allegation of specific conduct, the complaint or claim is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore*, 92 F. App'x at 190; *Frazier*, 41 F. App'x at 764. Furthermore, any "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill*, 935 F.3d at 518 (citation omitted). Because Plaintiff fails to allege that any of the named

Defendants played a role in the receipt or denial of medical care, Plaintiff fails to state an Eighth Amendment claim against Defendants regarding Plaintiff's allegedly inadequate medical care.

### 4. Segregation

Plaintiff suggests that Defendant Kienitz violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by keeping Plaintiff in segregation on May 18, 2025. (Am. Compl., ECF No. 11, PageID.13.) However, while Plaintiff may be denied certain privileges as a result of his placement in segregation, he does not allege any facts that he was denied basic human needs and requirements as a result. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation or classification status cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury that resulted from Defendant Kienitz's decision. *See* 42 U. S.C. § 1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Kienitz.

### D. Fourteenth Amendment Due Process Claims

Plaintiff suggests that Defendant Kienitz violated Plaintiff's Fourteenth Amendment due process rights by keeping Plaintiff in segregation as of May 18, 2025. (Am. Compl., ECF No. 11, PageID.13.) The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

For a convicted prisoner, the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to the Court, a prisoner is entitled to the protections of due process only when the change in conditions "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). For example, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Plaintiff's amended complaint is devoid of any facts supporting the inference that his placement in segregation had an inevitable effect on the duration of his sentence. Moreover, Plaintiff fails to allege that he suffered an "significant and atypical deprivation." Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868

13

(6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794.

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

The events described in Plaintiff's complaint occurred over a period of approximately five months, from March until July of 2025. Plaintiff does not allege any facts regarding the conditions of confinement in segregations that suggest that Plaintiff suffered a deprivation that was either atypical or significant. Accordingly, because Plaintiff's allegations fail to implicate a liberty

interest, his Fourteenth Amendment due process claim against Defendant Kienitz will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith.

A Judgment consistent with this Opinion will be entered.

Dated:      July 31, 2025                             /s/ Jane M. Beckering
                                                     Jane M. Beckering
                                                     United States District Judge